UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WARREN E. WHITE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-3606** |
| **GAYLE SLOAN, ET AL.** | **SECTION I/5** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendants, the St. Tammany Parish School Board ("the Board"), St. Tammany Parish School Superintendent Gayle Sloan, and Fontainebleau High School principal, Johnny Vitrano (collectively referred to herein as the "administration defendants").[1] Plaintiff, Warren White, Jr., opposes the motion. For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

This case arises out of a dispute between plaintiff and defendants concerning the circumstances leading to plaintiff's resignation from his teaching position at Fontainebleau High School ("FHS"). During the 2006-2007 school-year, plaintiff was a non-tenured teacher employed by the Board and a member of the teacher's union. Over the course of that year, plaintiff had several meetings with Jonny Vitriano concerning plaintiff's performance as a teacher. Plaintiff alleges that those meetings were an effort to manufacture a pretext to fire him and that Vitriano was actually engaged in race-based discrimination and harassment.[2]

---
[1] R. Doc. No. 65.
[2] R. Doc. No. 1, para. 11.

On May 21, 2007, a hearing was held wherein Vitrianao recommended plaintiff's termination to the school board. On May 31, 2007, before the Board could act on Vitriano's recommendation, plaintiff resigned his position.

Plaintiff filed this lawsuit on May 30, 2008.[3] In addition to his race discrimination claims against the school system, plaintiff also alleges that the teacher's union failed to adequately represent plaintiff by failing to appeal the recommendation for termination or file a grievance against Vitriano.[4]

*LAW AND ANALYSIS*

**I.  STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[3] R. Doc. No. 1.
[4] Plaintiff filed his lawsuit with respect to the representation claims against the teacher's union and the union president. These claims were dismissed by the Court as time-barred and the union defendants were dismissed. R. Doc. No. 96.

(1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## II. DISCUSSION

A. The framework for proving a race discrimination claim.

Plaintiff's race discrimination allegations are premised on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law ("LEDL"). Courts interpreting both § 1981 and the LEDL use the same three-step burden-shifting procedure established in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802-05 (1973), for cases alleging Title VII racial discrimination. See Armstrong v. City of Dallas, 997 F.2d 62, 65 n.2 (5th Cir. 1993) (§ 1981); Lee v. Constar, Inc., 921 So.2d 1240, 1247 (La.App. 4 Cir., 2006) (LEDL); Motton v. Lockheed Martin Corp., 900 So.2d 901, 909 (La.App. 4 Cir. 2005) (LEDL); see also Bustamento v. Tucker, 607 So.2d 532, 539 n.9 (La. 1992) (stating

that, due to the similarities in scope between Title VII and the LEDL, Louisiana courts look to the jurisprudence construing the federal statute for guidance in interpreting the LEDL).

Under McDonnell Douglas, the plaintiff must first establish a *prima facie* case of discrimination.[5] McDonnell Douglas, 411 U.S. at 802. If the plaintiff presents a *prima facie* case of discrimination, then an inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. Id. If the employer is able to provide a nondiscriminatory reason, the burden shifts back to the plaintiff to present evidence that the employer's proffered reason was a mere pretext for racial discrimination. Id.

The ultimate burden of proving intentional discrimination rests at all times with the plaintiff. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). Further, "instances exist where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." Okoye v. University of Texas Houston Health Science Ctr., 245 F.3d 507, 514 (5th Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 148 (2000)).

---

[5] To prove a *prima facie* case for an allegedly racially motivated employment action, plaintiff must establish that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004) (Title VII); see also Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999) (§ 1981); Mbarika v. Board of Sup'rs of Louisiana State University, 992 So.2d 551, 562 (La.App. 1 Cir. 2008) (LEDL).
  To establish a *prima facie* case when asserting a hostile work environment claim, plaintiff must prove that: "(1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."
Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354 (5th Cir. 2001); see also Hicks v. Central Louisiana Elec. Co, Inc., 712 So.2d 656, 658-59 (La.App. 1 Cir. 1998) (applying the same test to an LEDL claim). If, as here, the harassment was allegedly committed by a supervisor with authority over the harassment victim, the plaintiff need only satisfy the first four elements. Celestine, 266 F.3d at 354-355.

B. Plaintiff's race discrimination claim.

Assuming without deciding that plaintiff has demonstrated a *prima facie* case, he failed to rebut the defendants' legitimate, nondiscriminatory explanation and he did not otherwise show that intentional discrimination motivated his departure.[6] Defendants assert that plaintiff's departure resulted from plaintiff's failure to perform his duties and responsibilities as a teacher and plaintiff's poor classroom supervision.[7] Because the Court does not engage in credibility determinations at this stage, the Court acknowledges that defendants have met their burden of production and the Court now reviews plaintiff's arguments concerning pretext. See St. Mary's Honor Ctr. et al. v. Hicks, 509 U.S. 502, 509 (1993); see also Bodenheimer v. PPG Industries, Inc. 5 F.3d 995, 958 (5th Cir. 1993) ("The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be.").

Where, as here, a plaintiff does not offer any direct evidence of discrimination, he must show by circumstantial evidence that defendants' reasons are a "mere pretext for racial discrimination." Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316 (5th Cir. 2004). "To carry this burden, the plaintiff must produce *substantial evidence* indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003) (emphasis added). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Id. at 579 (quotation marks omitted).

At the outset, the Court notes that neither plaintiff's original complaint nor plaintiff's amended complaint contains any allegations of fact tending to support his contention that his

---

[6] Because of this Court's opinion with respect to pretext, the Court does not reach defendants' assertion that plaintiff's claims fail because he resigned rather than being discharged.
[7] R. Doc. No. 65-4, paras. 8-9. Vitriano states, "Because of concerns for the students, and Warren White's inability to properly supervise and run his classroom, and because of the issues that had previously led me to reprimand Warren E. White, Jr., I recommended [his termination]."

departure was a result of intentional race discrimination.[8]  Plaintiff's opposition is similarly lacking in concrete allegations.

The one factual allegation plaintiff does make, asserted in plaintiff's deposition,[9] is that he was disciplined when a student exposed himself in plaintiff's class, but another teacher, Tracy Hoffman, was not disciplined when the same student allegedly exposed himself in her class. Although plaintiff's opposition does not state the race of the other teacher,[10] his deposition states that Ms. Hoffman was white.[11]   "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals."  Bryant v. Compass Group USA, Inc., 413 F.3d 471, 478 (5th Cir. 2005).  The plaintiff must show, however, that the employer gave preferential treatment to another employee under "nearly identical circumstances."  Id.

Plaintiff has not established that a genuine issue of material fact exists with respect to whether the other teacher received preferential treatment.  Plaintiff provides no context for the other alleged incident.  Nor does he provide any evidence to suggest that the other teacher was "similarly situated."  Plaintiff's disciplinary action occurred in the context of multiple disciplinary actions, including instances where plaintiff allegedly left his classes unattended[12] and exhibited poor classroom management.[13]  Plaintiff has not provided sufficient evidence to suggest that the other incident occurred under "nearly identical circumstances."  See Okoye, 245

---

[8] See R. Doc. Nos. 1 and 30.  While both documents contain plaintiff's objections concerning the circumstances of his dismissal and the unsupported allegation that defendants' actions "constituted race-based harassment and discrimination," neither document highlights any specific events to support the contention that the treatment plaintiff received was a result of his race.
[9] R. Doc. No. 65-7, p. 160.
[10] See R. Doc. No. 92, p. 7.
[11] R. Doc. No. 65-7, p. 160.
[12] R. Doc. No. 65-6, p. 96.
[13] R. Doc. No. 65-4.

F.3d at 514 (holding that plaintiff could not establish "nearly identical circumstances" where the disciplinary records for the allegedly similar employees were different).

The Court first notes that, in his deposition, plaintiff states that he knew that Tracy Hoffman had difficulty with classroom management and that this knowledge was based on personal observations. He does not state, however, that the defendants were aware of such difficulties. Additionally, plaintiff admits that, at the time of its occurrence, he was unaware of, and he did not report, the incident where the student exposed himself in plaintiff's class.[14]

Because plaintiff fails to meet his summary judgment burden with respect to demonstrating that defendants' actions were motivated by intentional discrimination, summary judgment in favor of the defendants is appropriate. Plaintiff has not provided sufficient facts to establish a genuine issue of material fact that intentional discrimination was the reason for his departure from his job.

Accordingly,

**IT IS ORDERED** that defendants' motion is **GRANTED**. Plaintiff's claims against defendants, the St. Tammany Parish School Board, St. Tammany Parish School Superintendent Gayle Sloan, and Fontainebleau High School Principal Johnny Vitrano, are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 4, 2010.

                                                               **LANCE M. AFRICK**
                                          **UNITED STATES DISTRICT JUDGE**

---

[14] R. Doc. No. 65-7, p. 151.